IN THE

# Supreme Court of Georgia,

## AT ATLANTA.

---

### AUGUST TERM, 1878

---

PRESENT—HIRAM WARNER....... ...CHIEF JUSTICE.
L. E. BLECKLEY............ASSOCIATE "
JAMES JACKSON........... " "

---

### NEWTON *vs.* MAYO.

1 On the facts in the record, the possession on which the prescriptive title rests had its commencement under circumstances consistent with good faith in the possessor.
2. Though the charge of the court may have been inaccurate, its correction is not needful to a proper result of the case. The verdict is what it should have been.

Prescription. Charge of Court. New trial. Before Judge CRISP. Dougherty Superior Court. April Term, 1878.

On April 20th, 1869, John H. Newton brought ejectment against James O. Boyd for lot 212 in the first district of originally Early but now Dougherty county. The defendant was served on the 27th of April thereafter, but subsequently died, and Amos Mayo, the then tenant in possession, was served on September 21st, 1872. He was made a party defendant and the case proceeded to trial.

The plaintiff showed a clear chain of title from the state to himself.

The defendant introduced a bond for titles from W. W. Cheever to James W. Boyd, covering lots 179, 180 and 212, dated November 10th, 1858. Bond from L. A. Jordan to James W. Boyd, covering same lots, dated January 26th, 1860. Deed from Jordan to James W. Boyd, covering same property, dated March 26th, 1861.

James S. Miller testified as follows: Has known lot in controversy since 1852; first improvements were placed thereon in 1861 by Reuben Boyd; James W. Boyd bought from Cheever in fall of 1858, commenced clearing in 1861, and the Boyds have been in continuous possession ever since. James O. Boyd placed Amos Mayo in possession as his tenant; Mayo went to Florida in 1875; does not know who is in possession now. Reuben Boyd was the overseer of James W. Boyd.

James O. Boyd testified by deposition as follows: His father, James W. Boyd, purchased the three lots for $2,500.00 each, from W. W. Cheever. He first got a bond for title from him, and then a similar instrument from L. A. Jordan, who subsequently made a deed to him. The notes for the purchase money were paid at maturity.

These notes, as shown by the bond for title, matured February, 1859; January, 1860, and January, 1861—$2,500.00 each.

The defendant introduced an agreement between L. A. Jordan and James W. Boyd, of date January 26th, 1860, in which it is stated that Cheever sold the lots to Boyd and took, his notes for the purchase money, giving him a bond for title; that Cheever had sold the notes to Jordan, and to secure their payment, had conveyed to him the title to the lot. Jordan, in this instrument, acknowledged payment to him of the first note and that the second note was about to be paid, and hence he agreed, upon payment of the notes, to convey to Boyd in accordance with Cheever's bond.

Also a letter from Cheever to Boyd, dated June 9th,

1859, in which he speaks of having sold Boyd's *note* to Jordan, not stating when, and makes known the fact that he only has John H. Newton's bond for title, and has not paid all the purchase money.

Also a letter from Slaughter & Ely, attorneys, to Boyd, of date October 26th, 1859, stating that they would advise the latter to pay no more money on the notes, as Mr. Brown had given him notice that he holds notes for the purchase money which are still unpaid. That if Cheever still holds his (Boyd's) notes for the purchase money, and would consent to the arrangement, it would suit him as well to pay Brown as to pay Cheever, etc., etc.

Richard Hobbs testified that he received from John H. Newton, in 1859, two notes made by W. W. Cheever, both dated March 25th, 1856, the first due January 1st, 1858, for $400.00, the second due January 1st, 1859, for $300.00; that the notes recited that they were given for the lot in controversy; that he knew the lot well; the clearing on it appeared as of recent date.

The jury found for the defendant. The plaintiff moved for a new trial because the verdict was contrary to the law and the evidence, and because the court erred in the following charge : "That if Boyd bought three lots of land, taking one bond for title to them, and took possession of any one of these, by clearing, cultivating and controlling either one of them, that possession extended to the whole of the three lots. And if Boyd, and those claiming under him, so held the lot in dispute under such bond for title, and entered into possession of said land, and held the same seven years, openly and notoriously and under a claim of right, said bond would be sufficient written evidence of title upon which to sustain a prescriptive title, if the other elements of prescription, as I have given you them in charge, are satisfactorily proven."

The motion was overruled and the defendant excepted.

D. H. Pope; Richard Hobbs; R. K. Hines, for plaintiff

in error, cited 14 *Ga.*, 156 ; 25 *Ib.*, 643 ; 29 *Ib.*, 17 ; 43 *Ib.*, 293 ; 47 *Ib.*, 302 ; 55 *Ib.*, 445 ; 58 *Ib.*, 511.

L. P. D. WARREN ; C. B. WOOTEN, for defendant in error, cited 44 *Ga.*, 214 ; 53 *Ib.*, 655 ; 57 *Ib.*, 204.

BLECKLEY, Justice.

1. It appears from the record, reading the transcript in full, that the Boyds are so related to the possession as that the original possession of James W. Boyd, has come down regularly to Mayo, the defendant in this suit, who went in as tenant under James O. Boyd. The point made by counsel touching the good faith of the possession at its commencement, is directed at James W. Boyd's possession exclusively. How, then, did it commence ? Cheever sold three lots, one of which is the premises in dispute, to James W. Boyd, in 1858, for $2,500.00 each, making $7,500.00. Boyd took Cheever's bond for titles, and gave him three notes, each for $2,500.00, one due in February, 1859, one in January, 1860, and one in January, 1861. Cheever sold these notes to Jordan, at what precise time does not appear, but most probably previous to February, 1859 ; for James O. Boyd testifies the notes were all paid at maturity, and the evidence indicates that all of them were paid to Jordan. No deed from Cheever to Jordan is produced, but there is a statement in one of the writings that such a deed was made ; and that is in harmony with the course of events afterwards. In January, 1860, Jordan made a bond for title to James W. Boyd, with an agreement reciting that Jordan had purchased the notes from Boyd, that the first note had been paid to Jordan, and that the second was about to be paid, etc. The stipulation was that Jordan was to convey when all the notes were paid. On the 26th of March, 1861, Jordan did convey all three of the lots to James W. Boyd, by deed, with the usual warranty of title. The deed acknowledged the payment of the purchase money in full. During this latter year, whether before or

after the deed was made does not appear, Boyd's actual possession of the particular lot now in controversy commenced, and no suspicion attaches to it, or ever did attach to it, so far as appears, but what may arise out of the following additional facts : The true paper title was in John H. Newton, under whom Cheever held by bond for title only, with the purchase money not fully paid.    If this had been known to Boyd in due time, it might, and perhaps would have prevented his subsequent possession from being *bona fide* as against Newton ; and the question is, whether he acquired notice early enough to effect his conscience and make his subsequent actual possession fraudulent.    There is no suggestion that he had any notice whatever of any want of full legal title in Cheever, at the time of the purchase, nor until he had paid off the first note, if it be true that he paid it at maturity.    The letter to him from Cheever, which is relied upon to affect him with notice, is dated June 9th, 1859 ; and the letter from Slaughter & Ely (who seem to have been his own legal advisers) is of still later date.    But even if the first note was not paid off, it is certain, from this same letter of Cheever, that it, or one of the other notes, or all three of them, had previously been transferred to Jordan, and as they were notes, and were negotiated at some time, they should be presumed to have been negotiable upon their face, the contrary not appearing ; and, moreover, there being no evidence tending to show that Jordan acquired them after due, the presumption holds that it was before they became due, a presumption which the evidence, as far as it goes, agrees with and strengthens.    There is no evidence that Cheever indorsed them, or that Jordan had any notice of Cheever's want of full title to the land.    Thus, when Boyd became affected with notice that he had purchased from a person whose title was incomplete, he had paid one of the notes, which covered as much of the aggregate purchase money as either of the lots sold for ; or if he had not then paid anything, one of the notes or all three, had been transferred to a *bona fide* holder for value, to whom

all of them were afterwards paid. We think he was not obliged to abstain from taking possession of the land, if he had either paid for it, or become bound to pay to an inno cent transferee, before notice reached him. Even less than this might perhaps serve. 55 *Ga.*, 497 (5). It seems to us that after having innocently bought the land, and been brought into a position where he was obliged to pay for it, he might, after paying for it, hold it adversely under either a deed or a bond for title. This would not defeat the better title until seven years had elapsed without suit, and in the meantime, there would be a chance for all parties to get justice by the first purchaser (Cheever) paying up the balance due to the first vendor (Newton). The adverse possession might thus result in no injury to any one.

2. The charge of the court is open to question, but concede it to be erroneous, or not to apply strictly to the facts in evidence, the verdict was correct, and a new trial is not needed. When there is already a proper verdict, it may be assumed that another trial should and would result in another proper verdict—that is, in a second just like the first. One of the right sort is enough. The possession was adverse, under color of title and claim of right, and was continuous for more than seven years before suit was brought. The interval was from 1861 to April, 1869.

Judgment affirmed.